UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID BLOEM,<br>8118 Carnegie Hall Place<br>Apt. 201<br>Vienna, VA 22180,<br><br>      PLAINTIFF<br>  vs.<br><br>UNKNOWN DEPARTMENT OF THE<br>INTERIOR EMPLOYEES,<br>*in their individual capacities*,<br><br><br>      DEFENDANTS | Case No. 1:11-cv-2155 (JEB)<br><br>**JURY TRIAL DEMANDED** |

**THIRD AMENDED COMPLAINT**

INTRODUCTION

1. Through this action, Mr. David Bloem seeks damages for unlawful interference with his constitutional rights by Defendants Unknown Department of the Interior Employees.

2. At all times relevant to this Complaint, Mr. Bloem was a member of Occupy DC a/k/a/ Occupy K Street (hereinafter "Occupy DC"), an unincorporated nonprofit association composed of individuals who had gathered to protest and seek redress of their grievances from the government. Occupy DC protesters had, in 2011 and 2012, occupied McPherson Square, which borders K Street. McPherson Square is and was a uniquely appropriate venue for the protest, as it is a traditional public forum located near the street well-known for its lobbyists. Mr. Bloem seeks declaratory and monetary relief in order to compensate him for damages that have resulted from unconstitutional

1

governmental interference with his constitutional rights.

## VENUE AND JURISDICTION

3. Mr. Bloem bring this action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

4. The Court has jurisdiction over this action under 28 U.S.C. § 1331.

5. Venue is proper in this district pursuant to 28 USC § 1391(b)(2) because the events or omissions giving rise to this action occurred in the District of Columbia.

## PARTIES

6. Mr. David Bloem is a citizen of Virginia and at all relevant times was, and now is, a member of Occupy DC.

7. Defendants Unknown Department of the Interior Employees are and were employees of the Department of the Interior, an agency of the United States.

8. Subagencies of the Department of the Interior include the National Park Service (hereinafter, "NPS") and the United States Park Police (hereinafter, "USPP").

9. At all times relevant to this Complaint, Defendants were acting under color of federal law within the scope of their employment at the Department of the Interior. Defendants are sued in their individual capacities.

## FACTUAL ALLEGATIONS

10. Members of Occupy DC had gathered to protest and to petition the government in order to bring awareness to their concerns about United States economic policy, wealth disparity and the political process, through the peaceful, symbolic, round-the-clock occupation of McPherson Square in Washington, DC. Occupy DC participants

came together on October 1, 2011, to begin physically occupying McPherson Square on that day and continuously occupied McPherson Square for several months thereafter. The location, bordering K Street, was integral to the expression of the Occupy DC message of the possibility that government will hear the voices of the people and will move, with the people, towards a more democratic, just and economically egalitarian society.

11. The Occupy Movement is a people-initiated movement that commenced with Occupy Wall Street in Zucotti Park, now called Liberty Square, in Manhattan's Financial District in New York City on September 17, 2011. At its peak, Occupy had spread to hundreds of cities, towns and states in the United States and to more than 1,500 locations worldwide. The movement seeks to expose how the wealthiest 1% of society are promulgating an unfair global economy that is harming people, and destroying communities worldwide. The Occupy protesters had come out to protest and to petition the government for more economic equality through societal and governmental changes.

12. A key purpose of the Occupy Movement is to raise awareness about issues with the United States political process and the country's extreme economic inequality by participating in symbolic, round-the-clock, peaceful protests, or "occupations."

13. The protests in the states, cities and towns across the country use the "Occupy" identifier, first used by Occupy Wall Street, and the same slogan, "We are the 99%," referring to the extreme wealth disparity between the wealthiest 1% of Americans and the rest of the populace.

14. Occupy participants utilize a "general assembly" form of direct democracy, which aims to equalize the power of individual voices. The general assembly is not only functional, but is also symbolic of what form a more just and egalitarian

society might take.  Collective decision-making is made in an open, participatory and non-binding manner.

15. The Occupy protesters' 24 hour-a-day physical occupation of the portion of the city or town which they occupy was a core component of the message of the Occupy movement, which was expressed through the establishment of tents and other temporary structures, which remained in place around-the-clock. The tents and other structures were a key component of protesters' actual "occupation" of the city or town and, therefore, a key component of the Occupy protesters' political statement and petitioning conduct.  They expressed the Occupy protesters' statement of the 99% taking back the city or town and of hope for a more just and equal society in a way that other forms of protest could not express.

16. A group of participants, including Plaintiff, set up tents in McPherson Square.

17. Carol Johnson, a spokeswoman for the National Park Service (hereinafter "NPS") stated to a reporter from the Huffington Post, in reference to the occupiers at McPherson Square, "[T]ents are allowed there. And a 24-hour vigil is allowed there."

18. At all times relevant to this Complaint, Occupy DC had an established presence in McPherson Square.  Like the Occupy protests in other locations across the country, literal occupation of McPherson Square 24 hours-a-day was a core component of the Occupy DC movement and a key message the Occupy DC protesters sought to communicate to the government and the world.

19. The occupation in McPherson Square identified Occupy DC as part of the larger Occupy movement in a manner that other forms of protest could not accomplish. Occupy DC, along with the entire Occupy movement, sought to begin an ongoing discussion about reforming Wall Street and removing special interests from government.

Marching, making speeches, holding up signs, or other forms of protests could not communicate the message of taking back the City of Washington, and demonstrating the possibility of a more just and equal society, in the manner that Occupy DC's around-the-clock protest with tents and other structures communicated that message.

20. The McPherson Square location was also fundamental to the Occupy DC message. Locating the Occupy DC tents and other structures directly on K Street communicated a message about the disproportionate influence of corporate lobbyists, and that message could not be communicated as effectively in another location.

21. There was no alternative location in Washington at which Occupy DC members could have effectively communicated their message or petitioned the government.

22. Like all of the Occupy locations, Occupy DC utilizes the slogan "We are the 99%," as part of its political message and petitioning activity to highlight the difference in the United States between the wealthiest 1% and the rest of the population.

23. Occupy DC utilizes direct democracy with the aim of equalizing the power of individual voices. This direct democracy is not only functional, but is itself symbolic of the more just and egalitarian society that the protesters' envision. Occupy DC utilized a "general assembly" to facilitate collective decision making in an open, participatory and non-binding manner. General assembly is an open forum which was held on most days and Occupy DC welcomed anyone to participate in general assembly, both occupiers and passersby.

24. Beginning on October 1, 2011, the Occupy DC vigil had continuously occupied McPherson Square with tents and other structures, although the number of individuals participating fluctuates throughout the day as many of the regular participants work and/or attend school.

25. In response to political pressure from Republican Congressman and multi-millionaire Darrell Issa, an opponent of the Occupy movement, NPS officials decided to dismantle substantial portions of the Occupy DC vigil at McPherson Square.

26. At a January 24, 2012 subcommittee hearing before Rep. Issa's Oversight and Government Reform Committee, NPS Director Jonathan B. Jarvis stated, "We are about to enforce the camping regulations."

27. Later that week, on January 27-29, 2012, NPS distributed flyers in McPherson Square which stated that on January 30, 2012, the USPP would commence enforcing NPS camping regulations. According to the notices, "On or about noon, January 30, 2012, if camping violations are observed, individual violators may be subject to arrest and their property subject to seizure as evidence. Any temporary structure used for camping also will be subject to seizure as an abatement of a public nuisance[.]"

28. On February 4, 2012, and continuing into the morning of February 5, 2012, under the pretext of enforcement of the camping regulation, hundreds, if not thousands, of items of personal property in McPherson Square which were part of the Occupy DC vigil were seized and/or destroyed by or at the direction of the defendants. The vast majority of these items did not constitute a public nuisance, were not abandoned, and were not evidence of a crime.

29. Defendants seized and destroyed or caused to be seized and destroyed the following items belonging to Plaintiff David Bloem: a green indoor/outdoor carpet which was approximately 10' x 20', a blue tarp which was about 30' x 20' and which was folded and underneath the green carpet, a baby stroller, a tent case, a 6" high white plastic fence, six garden stones which were approximately 1' square and which had "Occupy DC" and children's footprints stenciled on them. These items were placed into a trash compactor truck and immediately destroyed. Prior to being destroyed, these items were

adjacent to a small circus-themed tent which contained two garden stones, a child's toy that plays music, and a seat cushion, all of which belong to Mr. Bloem. All of the items were clean, there was no pooled water, and no bedding or camping material.

30. Plaintiff went to the District 1 station and the "boneyard" on August 17, 2012 and confirmed that his items were not there.

31. Based on the notices distributed by NPS on January 27-29, 2012, Plaintiff did not have any reason to believe that any of his items would be seized and/or destroyed. The items seized from Plaintiff and destroyed were not being used for camping, but were obviously part of a symbolic display. Indeed, in this litigation the government specifically disclaimed any intention of seizing property from law-abiding protesters. As a result, Plaintiff had no notice that his items would be seized and no opportunity to reclaim them because they were destroyed immediately.

32. At no point did NPS invoke 37 C.F.R. § 1.5 in order to close McPherson Square and seize the protesters' items.

33. Defendants lacked appropriate procedural safeguards to assure that items which did not constitute a public nuisance, were not evidence of a crime, and were not abandoned would not be seized and/or destroyed.

34. The decision of whether to seize and/or destroy items was left to the individual judgment of the defendants without any clear guidance as to how to determine whether an item should be seized and/or destroyed.

35. The defendants made *ad hoc* decisions on the spot with little opportunity for reflection or deliberation.

36. The defendants made no record of what property they determined should be destroyed or the reason for their decision.

37.     No warrant was sought or obtained which would have authorized the seizure and/or destruction of Plaintiff's items.

38.     Although the NPS notices and comments from NPS officials publicly stated that they were merely enforcing camping regulations and abating public nuisances, this was merely a pretext for dismantling large portions of the Occupy DC vigil. In fact, Defendants seized and destroyed or caused to be seized and destroyed a substantial number of items which were of the Occupy DC vigil which were not in violation of the camping regulation and not a public nuisance. For example, approximately between ten and twenty tents that were clean and completely empty were seized and destroyed. Further, Defendants seized or caused to be seized approximately fifteen tents which were clean and did not have bedding material, such as sleeping bags, but did have other objects inside. One tent belonging to a member of Occupy DC who is not a plaintiff in this action had nothing in it but a yoga mat which was rolled up and that tent was removed by or at the direction of Defendants.

## COUNT I: FIRST AMENDMENT

39.     Plaintiffs repeat and reallege the allegations of each of the preceding paragraphs as if set forth fully herein.

40.     Defendant's seizure and destruction of Plaintiff's items, which were being used as part of his participation in Occupy DC, violated his rights under the First Amendment.

## COUNT II: FOURTH AMENDMENT

41.     Plaintiffs repeat and reallege the allegations of each of the preceding paragraphs as if set forth fully herein.

8

42. Defendants have violated Plaintiffs' right to be free from unreasonable seizure of his property. The initial seizure of his property was unreasonable, but even if it had been reasonable, the immediate destruction of the property rendered the seizure unreasonable.

## COUNT III: FIFTH AMENDMENT

43. Plaintiffs repeat and reallege the allegations of each of the preceding paragraphs as if set forth fully herein.

44. Defendants have violated Plaintiffs' right to due process by confiscating and destroying his property without adequate notice or a meaningful opportunity to be heard.

## PRAYER FOR RELIEF

1. Award damages against Defendants for violations of his Constitutional rights;

2. Order Defendants to pay costs of suit and attorney's fees as provided by law;

3. Order such other relief as the Court deems just and proper.

    /s/ Jeffrey Light

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com

*Counsel for Plaintiff*