UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID BLOEM,

    Plaintiff,

       v.

UNKNOWN DEPARTMENT OF THE
INTERIOR EMPLOYEES,

    Defendants.

Civil Action No. 11-2155 (JEB)

## MEMORANDUM OPINION

Beginning on October 1, 2011, numerous individuals participated in a round-the-clock occupation of McPherson Square in downtown Washington, D.C., known as "Occupy DC." Similar protests were carried out in cities across the country, beginning with the "Occupy Wall Street" protest in New York.  On January 27, 2012, the National Park Service distributed flyers to the protesters indicating that the United States Park Police would soon begin enforcing NPS regulations prohibiting camping in the park.  Several protest participants sought a preliminary injunction barring the USPP from enforcing these regulations, which this Court denied on February 2, and the USPP began clearing the park of violators on February 4.  During the course of the USPP enforcement operation, many items of personal property were allegedly seized or destroyed, including property belonging to David Bloem, the sole remaining Plaintiff here.

In the Third Amended Complaint filed in this action, Plaintiff Bloem seeks relief under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), for the seizure and destruction of his property, which he alleges violated his First, Fourth, and Fifth Amendment rights.  Defendants now bring this Motion to Dismiss, arguing that no Bivens action

may lie for the conduct at issue in this case, and that even if one were available, they are entitled

to qualified immunity.[1]   Because the Court finds that Plaintiff may pursue a <u>Bivens</u> remedy for

the harm alleged here and that Defendants are not entitled to qualified immunity, it will deny

their Motion.

## I.      Background

The facts surrounding the underlying dispute in this action and the Park Service's ability

to enforce regulations barring camping in McPherson Square are set forth in this Court's prior

Opinion denying the earlier Plaintiffs' request for a preliminary injunction.   <u>See</u> <u>Henke v.</u>

<u>Department of the Interior</u>, 842 F. Supp. 2d 54 (D.D.C. 2012).   According to the Third Amended

Complaint, which must be presumed true at this stage in the proceedings, participants in the

"Occupy DC" protest set up a "24 hour-a-day physical occupation" of the park, which was

"expressed through the establishment of tents and other temporary structures, which remained in

place around-the-clock."   <u>See</u> Third Am. Compl., ¶ 15.   Plaintiff Bloem was a participant in the

protest and had set up a tent and display that included a green indoor/outdoor carpet, a blue tarp,

a baby stroller, a tent case, a six-inch-high white plastic fence, and six garden stones stenciled

with "Occupy DC" and children's footprints.   <u>Id.</u>, ¶ 29.

Several months later, after this Court had denied Plaintiffs' request for a preliminary

injunction to bar police action, NPS personnel proceeded to enforce the camping regulations on

February 4, 2012.   <u>Id.</u>, ¶ 28.   Plaintiff alleges that "hundreds, if not thousands, of items of

personal property in McPherson Square which were part of the Occupy DC vigil were seized

and/or destroyed by or at the direction of the defendants."   <u>Id.</u>   After the USPP's enforcement

---

[1] Although the individual Park Service employees who Bloem alleges are responsible for seizing his belongings have not yet been identified, the Government may still move to dismiss on their behalf. <u>See</u> <u>Chung v.</u> <u>Department of Justice</u>, 2001 WL 34360430, at *8 n.11 (D.D.C. Sept. 20, 2001) ("The Court will accept DOJ's arguments on behalf of unknown officials at [the Motion to Dismiss] stage.").

operation, the prior Plaintiffs filed a Second Amended Complaint, seeking declaratory relief and damages for claimed violations of their Fourth and Fifth Amendment rights.  See Second Am. Compl. (ECF No. 27) at 16.  Pursuant to a joint request from these Plaintiffs and the Department of the Interior, the Court required prospective Plaintiffs to visit the D-1 Station of the United States Park Police, as well as the National Mall's open-air "Boneyard," to attempt to collect their property before being allowed to proceed in this case.  See Scheduling Order of July 23, 2012 (ECF No. 31).  Plaintiff Bloem visited both the Boneyard and the D-1 Station, but to no avail: he alleges that his property was immediately placed into a trash compactor during the USPP enforcement action, and he did not find his property at either location.  See Third Am. Compl., ¶¶ 29-30.  As the lone remaining Plaintiff, he then filed the Third Amended Complaint in this case, seeking damages under Bivens by alleging that the seizure and destruction of his property violated his First, Fourth, and Fifth Amendment rights.  On behalf of the unnamed Department of the Interior employees who are the nominal Defendants in this case, the Government now brings this Motion to Dismiss.

## II.    Legal Standard

### A.  12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported

by the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006)

(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations"

are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to

state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (internal quotation

omitted).  Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very

remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief

above the speculative level."  Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416

U.S. 232, 236 (1974)).

   B.   12(b)(4) & 12(b)(5)

   Defendants' Motion alternatively seeks to dismiss Plaintiff's suit for insufficient service

of process under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5).   While Defendants

correctly note that the individual Department of the Interior employees whose conduct is at issue

here have not yet been served, "Plaintiff may bring an action against unknown John Doe

defendants, but . . . must substitute named defendants after the completion of discovery."

Simmons v. District of Columbia, 750 F. Supp. 2d 43, 45 (D.D.C. 2011).  "[A]n action may

proceed against a party whose name is unknown if the complaint makes allegations specific

enough to permit the identity of the party to be ascertained after reasonable discovery."  Estate of

Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).  Here, Plaintiff has made

such allegations: he alleges that his property was seized and destroyed by Interior employees

who were involved in the clearing of McPherson Square on the night of February 4, 2012, a

sufficiently narrow group of employees that the actual perpetrators should be reasonably

identifiable after discovery.  The Court, accordingly, will limit its analysis to Defendants'

Motion under Rule 12(b)(6), but will allow them to renew their service arguments if, at the
conclusion of discovery, Plaintiff has failed to identify the Interior employees in question.

**III.     Analysis**

       Defendants raise two distinct challenges to Plaintiff's claims.  First, they contend that
Bloem cannot bring an action under <u>Bivens</u> for the alleged conduct here.  <u>See</u> Mot. at 1.  A
<u>Bivens</u> remedy should not be "creat[ed]," they argue, where a comprehensive statutory scheme –
here, the federal small-claims statute, 31 U.S.C. § 3723 – has been established to provide relief
in a given area.  <u>See id.</u> at 2, 8 (citing <u>Davis v. Billington</u>, 681 F.3d 377, 381 (D.C. Cir. 2012)
(Civil Service Reform Act), <u>Wilson v. Libby</u>, 535 F.3d 697, 704-10 (D.C. Cir. 2008) (Privacy
Act), and <u>Spagnola v. Mathis</u>, 859 F.2d 223, 229-30 (D.C. Cir. 1988) (Civil Service Reform
Act)).  Second, Defendants maintain that "[e]ven if this Court were to entertain a <u>Bivens</u> claim
against the individually-sued defendants, the Complaint fails to state a claim that can withstand
the defense of qualified immunity."  <u>Id.</u> at 14.  They contend that the Interior employees – likely
members of the U.S. Park Police – did not knowingly violate a "clearly established
Constitutional right" here, as no reasonable law-enforcement officer would have known that he
was violating Plaintiff's First, Fourth, or Fifth Amendment rights by seizing and destroying
property in the context of clearing McPherson Square.  <u>Id.</u> at 15, 18-22 (internal quotation marks
omitted).  The Court will address each challenge separately.

       A.   <u>Availability of a *Bivens* Action</u>

       Defendants argue that the circumstances here "counsel[] against the creation of an
alternative <u>Bivens</u>-type remedy," where a comprehensive statutory scheme – namely, the federal
small-claims statute – provides relief.  Mot. at 8-10.  The existence of this scheme, Defendants
assert, trumps precedent from this Circuit recognizing "a <u>Bivens</u> cause of action for a First

Amendment claim involving demonstrations."   Mot. at 8 (citing Dellums v. Powell, 566 F.2d

167 (D.C. Cir. 1977)).  The Court must separately address three issues to respond to Defendants'

position.  First, the Court will inquire whether a Bivens action may lie for violations of the First

Amendment rights of protesters, as well as for Fourth and Fifth Amendment violations.  Second,

the Court must determine if the officers' alleged conduct here could constitute violations of these

rights.  Third, the Court will discuss Defendants' assertion that the small-claims provisions of 31

U.S.C. § 3723 stand as Plaintiff's sole remedial option.

     *1.*      *Bivens Claims Arising Under the First, Fourth, and Fifth Amendments*

     Both this Circuit and this Court itself have held that a Bivens action may lie for violations

of the First Amendment rights of demonstrators.  See Dellums, 566 F.2d at 194-96; Hartley v.

Wilfert, --- F. Supp. 2d ---, 2013 WL 266514, at *4-5 (D.D.C. January 24, 2013).  In recognizing

such a cause of action, the D.C. Circuit reasoned:

> Basically, what is at stake here is loss of an opportunity to express
> to Congress one's dissatisfaction with the laws and policies of the
> United States.  Staged demonstrations capable of attracting
> national or regional attention in the press and broadcast media are
> for better or worse a major vehicle by which those who wish to
> express dissent can create a forum in which their views may be
> brought to the attention of a mass audience and, in turn, to the
> attention of a national legislature. . . .  The demonstration, the
> picket line, and the myriad other forms of protest which abound in
> our society each offer peculiarly important opportunities in which
> speakers may at once persuade, accuse, and seek sympathy or
> political support, all in a manner likely to be noticed.  Loss of such
> an opportunity is surely not insignificant.

Dellums, 566 F.2d at 195.  The court expressly rejected the appellants' argument that providing

such a cause of action would set a trap for the unwary policeman by  "subject[ing] police officers

to the alleged perplexities of First Amendment law," noting that the "broad good faith immunity"

available to officers exempts them from being "held to the standards of a constitutional lawyer." Id. at 195 n.84.

In the ensuing 35 years, other courts have come to the same conclusion.   See Mendocino Envtl. Ctr. v. Mendocino Cnty., 14 F.3d 457, 464 (9th Cir. 1994) (plaintiffs stated Bivens claim where complaint contained specific factual allegations that tended to show FBI agents intended to interfere with plaintiffs' First Amendment rights to demonstrate and communicate their message about the environment); Gibson v. United States, 781 F.2d 1334, 1342 (9th Cir. 1986) (allegation that "FBI agents acted with impermissible motive of curbing plaintiff's protected political speech . . . stated claim . . . cognizable through . . . Bivens-type action directly under First Amendment); Paton v. La Prade, 524 F.2d 862, 870 (3d Cir. 1975) (extending Bivens remedies "to violations of first amendment rights . . . .  [I]f [plaintiff] can prove that her first amendment rights were violated by a federal government employee, such evidence would support a cause of action for damages in the federal courts."); Jihaad v. Carlson, 410 F. Supp. 1132, 1134 (E.D. Mich. 1976) ("the rationale of Bivens may, in a proper case, be applied to violations of the first as well as the fourth amendment").

In Paton, the Third Circuit observed:

> Were there no cause of action for federal infringement of first
> amendment rights, an aggrieved individual could seek damages for
> violations of his first amendment rights by state officials, 42
> U.S.C. § 1983, but not by federal officials.  There is no reason to
> allow federal officials to act with impunity in this context and to
> bar state officials.  The damage to the individual's first amendment
> interests is the same regardless of the perpetrator of the violation.

Id. at 870; see also Gibson, 781 F.2d at 1342 n.3 (noting that "[g]iven the availability of § 1983 relief against state agents who infringe First Amendment rights, it is hard to see why Bivens relief should not be available to redress equivalent violations perpetrated by federal agents")

(citing <u>McKinley v. City of Eloy</u>, 705 F.2d 1110 (9th Cir. 1983)) (internal citation omitted).

Indeed, just last month this Court held that a protester who was intimidated into leaving the

White House sidewalk by Secret Service officers could bring a <u>Bivens</u> action for interference

with her First Amendment rights.  <u>See</u> <u>Hartley</u>, 2013 WL 266514, at *4.

      Defendants nevertheless challenge whether the <u>Bivens</u> cause of action as recognized in

<u>Dellums</u> is still viable precedent, contending that "it is unclear if that decision would survive

Supreme Court scrutiny," in light of its decision in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  <u>See</u>

Mot. at 7.  Specifically, they point to the following language in <u>Iqbal</u>:

> Because implied causes of action are disfavored, the Court has
> been reluctant to extend <u>Bivens</u> liability "to any new context or
> new category of defendants." [citations omitted]  That reluctance
> might well have disposed of respondent's First Amendment claim
> of religious discrimination.  For while we have allowed a <u>Bivens</u>
> action to redress a violation of the equal protection component of
> the Due Process Clause of the Fifth Amendment, [citation
> omitted], we have not found an implied damages remedy under the
> Free Exercise Clause.  Indeed, we have declined to extend <u>Bivens</u>
> to a claim sounding in the First Amendment.

<u>Id.</u> at 6 (quoting <u>Iqbal</u>, 556 U.S. at 675).  Even if Defendants were correct in predicting the

Supreme Court's response to questions not yet before it, this Court cannot accept its invitation to

depart from this Circuit's binding precedent.  <u>See</u> <u>Critical Mass Energy Project v. Nuclear</u>

<u>Regulatory Comm'n</u>, 975 F.2d 871, 876 (D.C. Cir. 1992) (*en banc*) (decisions of D.C. Circuit are

binding "unless and until overturned by the court *en banc* or by Higher Authority") (citation

omitted); <u>Owens–Ill., Inc. v. Aetna Cas. & Sur. Co.</u>, 597 F. Supp. 1515, 1520 (D.D.C. 1984)

("The doctrine of *stare decisis* compels district courts to adhere to a decision of the Court of

Appeals of their Circuit until such time as the Court of Appeals or the Supreme Court of the

United States sees fit to overrule the decision.").

Wisely, Defendants do not appear to dispute that a <u>Bivens</u> action may lie for Plaintiff's

Fourth and Fifth Amendment claims.  Indeed, the availability of such a remedy is well

established.  "In <u>Bivens</u> itself the Court held that the Fourth Amendment implicitly authorized a

court to order federal agents to pay damages to a person injured by the agents' violation of the

Amendment's constitutional strictures."  <u>Minneci v. Pollard</u>, 132 S. Ct. 617, 621 (2012) (citing

<u>Bivens</u>, 403 U.S. at 389).  Likewise, "[in] <u>Davis v. Passman</u>, . . . the Court . . . found a damages

action implicit in the Fifth Amendment's Due Process Clause."  <u>Id.</u> (citing <u>Davis v. Passman</u>,

442 U.S. 228, 248-49 (1979)); <u>see also</u> <u>Correctional Servs. Corp. v. Malesko</u>, 534 U.S. 61, 67-68

(2002) (noting that violations of Fifth Amendment's Due Process Clause are among the small

number of instances where Supreme Court has specifically recognized <u>Bivens</u> liability).  The

Court sees no reason – and, indeed, is not empowered – to deviate from this long line of binding

precedent.  The Court, accordingly, finds that to the extent Bloem can show a violation of his

First, Fourth, or Fifth Amendment rights, he appropriately states a <u>Bivens</u> claim for these

violations.

       2.      *Seizure and Destruction of Bloem's Property*

While a <u>Bivens</u> action may potentially lie for the infringement of these constitutional

rights, the Court must now decide whether the seizure and destruction of Bloem's property rose

to the level of such a violation.  Accepting Plaintiff's allegations as true – which the Court must

at this stage – Plaintiff has carried his burden.

Plaintiff first alleges that the seizure of his items from the park deprived him of his First

Amendment rights by dismantling his expressive display and preventing him from continuing his

expressive conduct.  <u>See</u> Third Am. Compl., ¶¶ 39-40.  Defendants argue, by contrast, that "[t]he

items allegedly seized and destroyed contain no inherent communicative value, including the

garden stones stenciled with 'Occupy DC,' because, without more, the message is

undecipherable." <u>See</u> Mot. at 12.  This argument, however, is unavailing: at this stage in the

proceeding, the Court must accept Plaintiff's plausible allegation that the materials seized were

intended to be communicative components of an expressive display.

Indeed, other district courts confronted with "Occupy" protests in other cities have

considered the tent cities and round-the-clock vigils themselves, rather than individual pieces of

property found therein, in evaluating the "expressive" nature of the conduct at issue.  Following

the Supreme Court's teaching in <u>Clark v. Cmnty. for Creative Non-Violence</u>, 468 U.S. 288

(1984), which assumed but did not decide that sleeping in a public park as part of a similar

demonstration to protest the treatment of the homeless was protected speech, these courts have

all held that the tent cities used by the Occupy movement (and, by extension, the items found

therein) were indeed expressive for First Amendment purposes.  For example, the Middle

District of Florida recently held that

> in the context of this case the tenting . . . in the park . . . is
> symbolic conduct which is protected by the First Amendment. The
> conduct of tenting . . . in the park 24 hours a day to simulate an
> 'occupation' is intended to be communicative and in context is
> reasonably understood by the viewer to be communicative. This
> expressive conduct relates to matters of public concern because it
> can be fairly considered as relating to matters of political, social, or
> other concern to the community and is a subject of general interest
> and of value and concern to the public.

<u>Occupy Ft. Myers v. City of Ft. Myers</u>, --- F. Supp. 2d ---, 2011 WL 5554034, at *5 (M.D. Fla.

Nov. 15, 2011); <u>see also, e.g.</u>, <u>Watters v. Otter</u>, 854 F. Supp. 2d 823, 828 (D. Idaho 2012) ("The

Court . . . finds it likely that Occupy Boise will succeed in showing that its tent city . . .

constitute[s] expressive conduct that is protected by the First Amendment."); <u>Occupy Columbia</u>

<u>v. Haley</u>, 866 F. Supp. 2d 545, 558 (D.S.C. 2011) ("The court, therefore, finds that Plaintiffs are

likely to succeed in establishing that their 24-hour occupation of the State House grounds, which involves camping and sleeping, is expressive conduct protected by the First Amendment."); Occupy Minneapolis v. County of Hennepin, 866 F. Supp. 2d 1062, 1069 (D. Minn. 2011) (same).

Although these cases do not bind this Court, the Court agrees with their reasoning and finds that the McPherson Square tent city – and, by extension, at least some of Plaintiff Bloem's property found within it – is appropriately alleged to be expressive conduct and is protected by the First Amendment.  This is not to say that seizure of any item from the tent city necessarily infringes on speech rights, but at this stage Bloem has sufficiently alleged that the seizure of his specific items here here did so.  Bloem thus properly alleges that by seizing and destroying these items, Defendants interfered with his expressive display and deprived him of his First Amendment rights.

In regard to the Fourth Amendment, an officer may seize an individual's property from a public area "only if Fourth Amendment standards are satisfied – for example, if the items are evidence of a crime or contraband." Soldal v. Cook Cnty., Ill., 506 U.S. 56, 68 (1992).   In addition to seizing contraband, evidence of criminal activity, or abandoned property, Park Police officers are authorized to abate public nuisances, including conduct that violates Park Service regulations.  See Green v. Lujan, No. 90-2293 (D.D.C. 1991), slip op. at 10.  To the extent Plaintiff's property did not constitute a public nuisance and was not abandoned, contraband, or evidence of a crime, however, the "touchstone of the [Fourth] Amendment is reasonableness . . . [based] upon the facts and circumstances of [the] case."  United States v. Proctor, 489 F.3d 1348, 1352 (D.C. Cir. 2007) (citations omitted).  As this Court has previously noted, the seizure of the property in the circumstances here "could . . . constitute a Fourth Amendment violation."  Henke,

842 F. Supp. 2d at 62.  Because Plaintiff alleges that his property was an expressive display, rather than abandoned, a public nuisance, contraband, or evidence of a crime, he has properly alleged that its seizure and destruction violated the Fourth Amendment.  See Third Am. Compl., ¶¶ 29, 31.

Moving from the Fourth to the Fifth Amendment, a long line of Supreme Court and D.C. Circuit precedent has made clear that "the due process clause requires, at a minimum, that the government provide notice and some kind of hearing before final deprivation of a property interest." Propert v. District of Columbia, 948 F.2d 1327, 1331 (D.C. Cir. 1991); see also, e.g., Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982) ("[I]t has become a truism that 'some form of hearing' is required before the owner is finally deprived of a protected property interest.") (citation omitted) (emphasis in original); Mathews v. Eldridge, 424 U.S. 319, 339-43 (1976) (due process requires notice and an "opportunity to be heard at a 'meaningful time and in a meaningful manner'" prior to the deprivation of a property interest) (citation omitted); Gray Panthers v. Schweiker, 652 F.2d 146, 158 (D.C. Cir. 1980) ("[T]he Supreme Court has said, . . . emphatically and repeatedly, that 'some kind of hearing' is required before a person may be finally deprived of a property interest . . ."); Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974) ("[S]ome kind of hearing is required at some time before a person is finally deprived of his property interests.").  Plaintiff's allegations of the summary destruction of his property without an opportunity to be heard, see Compl., ¶ 29, would, if proved, constitute a violation of his long-established Fifth Amendment due-process rights.

    3.    *Small-Claims Statute*

Even if Defendants' conduct here could normally give rise to a Bivens action, they assert a fallback argument based on the federal small-claims statute, 31 U.S.C. § 3723.  Specifically,

Defendants urge the Court to disregard <u>Dellums</u>, <u>Davis</u>, and indeed <u>Bivens</u> itself and deny a <u>Bivens</u> remedy where a comprehensive statutory scheme – here, the federal small-claims statute – has been established to provide relief in a given area.  <u>See</u> Mot. at 8-11.  The small-claims statute provides agencies with authority to settle "claim[s] for not more than $1,000 for damage to, or loss of, privately owned property that . . . is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment."  <u>See</u> 31 U.S.C. § 3723(1).  The Court disagrees with Defendants' preclusion argument.  Their unduly technical characterization of the conduct here would lead to the unjust result of privileging a violation of constitutional rights simply because the value of Plaintiff's property was likely less than $1,000.

Plaintiff correctly observes that the constitutional interests at issue here – freedom of speech, freedom from unreasonable seizures, and freedom from the loss of property without due process – are a far cry from the interests safeguarded by the small-claims statute, which protects individuals from the government's negligent mishandling of their effects.  <u>See</u> Opp. at 6.  The statute, which protects only against <u>negligent</u> loss of property, can hardly have been intended to cover situations like the one here, where government agents allegedly selected Plaintiff's property, removed it from the park, and placed it immediately into a trash compactor.  Notably, Defendants point to no case where a plaintiff has alleged a <u>Bivens</u> claim arising under the First, Fourth, or Fifth Amendments and a court has held that the small-claims statute – or even its better-known companion, the Federal Tort Claims Act, 28 U.S.C. § 2671 – preempts such a claim.

Indeed, the Supreme Court has held that the FTCA supplements, but does not supplant, the availability of a <u>Bivens</u> action.  In <u>Carlson v. Green</u>, 446 U.S. 14 (1980), the Court noted a

number of deficiencies in the Federal Tort Claims Act – in comparison to a <u>Bivens</u> action – that made the statute "[p]lainly . . . not a sufficient protector of the citizens' constitutional rights." <u>Id.</u> at 23.  There, the Court observed that <u>Bivens</u> can be preempted only where "Congress has created what it views as an <u>equally</u> effective remedial scheme.  Otherwise the two can exist side by side." <u>Id.</u> at 23 n.10 (emphasis in original).  The small-claims statute here suffers from many of the same deficiencies the Court observed in <u>Carlson</u>: recovery is limited, punitive damages are not available, and the deterrent effect provided by personal liability under <u>Bivens</u> may be limited where damages are paid by the agency.  <u>See id.</u> at 21-23.  As a result, like the FTCA, the small-claims statute does not provide an adequate substitute for a <u>Bivens</u> remedy for the constitutional violations alleged here.  <u>Cf. Hartley</u>, 2013 WL 266514, at *10 (finding Privacy Act did not preempt First Amendment <u>Bivens</u> claim).

    B.  <u>Qualified Immunity</u>

Defendants next contend that even if this Court were to find that Plaintiff had stated a <u>Bivens</u> claim under the First, Fourth, or Fifth Amendments, that claim would nonetheless be barred by qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  The doctrine "gives government officials breathing room to make reasonable but mistaken judgments" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2085 (2011) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

To show that a government official is not protected by qualified immunity, a plaintiff must establish (1) that the defendant's conduct violated the Constitution, and (2) that the constitutional right that was violated was sufficiently established such that a reasonable person would have known the conduct violated the Constitution.  Pearson, 555 U.S. at 231 (citing Harlow, 457 U.S. at 818).  For the reasons set forth in Section III.A, *supra*, the Court finds that Plaintiff has alleged violations of the First, Fourth, and Fifth Amendments.

The Court must now determine whether the rights at issue were clearly established.  To reject an official's claim of qualified immunity, "the unlawfulness" of his action must be apparent "in the light of pre-existing law."  Atherton v. Dist. of Columbia Office of Mayor, 567 F.3d 672, 689-90 (D.C. Cir. 2009) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (internal quotation marks omitted).  "An official enjoys protection from a lawsuit where [his] conduct is objectively reasonable in light of existing law.  Conversely, an officer is not shielded where he could be expected to know that certain conduct would violate statutory or constitutional rights."  Brown v. Fogle, 819 F. Supp. 2d 23, 28-29 (D.D.C. 2011) (quoting Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998) (internal citation and quotation marks omitted)).  The operation of the "clearly established" standard "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified."  Anderson, 483 U.S. at 639.  While the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right, id. at 640, this does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  Ashcroft, 131 S.Ct. at 2083; see Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012).

1.  *First and Fourth Amendments*

The qualified-immunity analyses regarding Plaintiff's First and Fourth Amendment claims overlap because both are predicated on an unlawful <u>seizure</u> of property, while the Fifth Amendment violation is based on <u>destruction</u> of the property.  Plaintiff alleges that his items were part of an expressive display; they were not abandoned, evidence of a crime, contraband, or a public nuisance; and they did not contain standing water or bio-hazard material.  As a result, he contends, reasonable officers should have known there was no basis for seizure of the items.  <u>See</u> Third Am. Compl., ¶¶ 28-31.  Defendants, by contrast, argue that "[t]here are no allegations that plaintiff's items were obviously separate from any public nuisance existing in McPherson Square."  <u>See</u> Mot. at 19-20.  Because Bloem's items were not (in Defendants' view) expressive and <u>could have been</u> a public nuisance, evidence of a crime, contraband, or abandoned property, Defendants seem to argue, they are entitled to qualified immunity based on a mistake-of-fact theory.  <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. at 231 (government agents may be entitled to qualified immunity regardless of whether their error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact") (citation omitted).  Likewise, Defendants imply, but do not explicitly state, that the law was not clearly established on these issues at the time the seizure occurred.  Neither point is persuasive.

As to the latter, it is simply beyond doubt that citizens have a right to express their political views by words and conduct in public fora. Prohibiting them from doing so may result in a "loss of an opportunity to demonstrate" that violates citizens' First Amendment rights "in their most pristine and classic form."  <u>Dellums</u>, 566 F.2d at 196 (citation omitted).  Indeed, a long line of Supreme Court cases has invalidated laws imposing such limits.  <u>See, e.g.</u>, <u>United States v. Grace</u>, 461 U.S. 171, 183 (1983) ("under the First Amendment," statute prohibiting use

of signs, banners, or other communicative devices on public sidewalks surrounding Supreme

Court "[was] unconstitutional"); Boos v. Barry, 485 U.S. 312, 329 (1988) (striking down statute

banning display of signs critical of foreign governments within 500 feet of an embassy as

"inconsistent with the First Amendment"); Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393

U.S. 503, 514 (1969) (plaintiffs' expressive activities "consisted only in wearing on their sleeve

a band of black cloth, not more than two inches wide . . . to exhibit their disapproval of the

Vietnam hostilities . . . to make their views known, and by their example, to influence others to

adopt them. . . . [O]ur Constitution does not permit officials of the state to deny their form of

expression.").

Similarly, regarding Plaintiff's Fourth Amendment claim, it was also clearly established

that "an officer who happens to come across an individual's property in a public area could seize

it only if Fourth Amendment standards are satisfied." Soldal, 506 U.S. at 68. Indeed, this Court

cautioned the Department of the Interior regarding this precise issue in denying Plaintiffs'

request for a preliminary injunction, noting that the seizure of expressive materials from the park

"could . . . constitute a Fourth Amendment violation." Henke, 842 F. Supp. 2d at 62. The clarity

of this bedrock principle of the Fourth Amendment is also beyond question.

To the extent Defendants rely instead on a mistake-of-fact defense, see Pearson, 555 U.S.

at 231, their effort is premature. At the motion-to-dismiss stage, the Court is obligated to accept

all facts well pleaded in the complaint, which here include Plaintiff's allegations that the items

seized were in fact expressive and were not contraband, abandoned property, evidence of a

crime, or a public nuisance. See Third Am. Compl., ¶¶ 28-31. As a result, "the officials' claims

of qualified immunity hardly present 'purely legal' issues capable of resolution 'with reference

only to undisputed facts.' Cases fitting that bill typically involve contests not about what

occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law." Ortiz v. Jordan, 131 S. Ct. 884, 892 (2011). While Defendants are free to raise these arguments again at the summary-judgment stage, they are inappropriate for resolution now. In other words, if Defendants can ultimately show that a reasonable officer would have believed that Plaintiff's belongings were not expressive or were contraband, evidence of a crime, abandoned property, or a public nuisance, they may yet be entitled to qualified immunity on Plaintiff's First and/or Fourth Amendment claims. This, however, will require further factual development.

       2. *Fifth Amendment*

Similarly, the Court finds that Defendants are not entitled to qualified immunity on Plaintiff's Fifth Amendment due-process claim. Defendants contend that they could not have violated Plaintiff's clearly established Fifth Amendment rights because he has not alleged "any facts . . . that preclude the action taken being the result of mere mistake or negligence on the part of a law enforcement officer." See Mot. at 20. Citing Daniels v. Williams, 474 U.S. 327 (1986), Defendants assert that a "negligent act does not implicate the Fifth Amendment's Due Process Clause," id.; because Defendants conceivably could have acted negligently, they could not have violated any clearly established constitutional right. Id. at 21.

Defendants' argument here is wide of the mark for several reasons. First, Defendants mischaracterize the holding in Daniels. In Daniels, the plaintiff's property was lost due to "the actions of prison custodians in leaving a pillow on the prison stairs, or mislaying an inmate's property . . . [a] lack of due care [that] suggests no more than a failure to measure up to the conduct of a reasonable person" – that is, the manner in which the items were lost was itself negligent. Daniels, 474 U.S. at 332. Here, by contrast, Plaintiff pleads conduct that must have

been intentional, and the Court must accept that characterization as true.  Plaintiff alleges that Defendants distributed flyers announcing their intent to enforce the camping regulations and clear the park of violators, and then "seized and destroyed or caused to be seized and destroyed" Plaintiff's belongings, which were "placed into a trash compactor truck and immediately destroyed."  See Third Am. Compl., ¶¶ 27, 29.  Although Defendants may subsequently be able to show that a reasonable officer would have believed the items trash or abandoned, thereby again invoking a mistake-of-fact defense, the Court must at this stage accept Plaintiff's allegations that the items fell into neither of those categories.

Second, Daniels aside, existing precedent has surely "placed . . . beyond debate," Taylor v. Reilly, 685 F.3d 1110, 1114 (D.C. Cir. 2012), the idea that "the due process clause requires, at a minimum, that the government provide notice and some kind of hearing before final deprivation of a property interest."  Propert, 948 F.2d at 1331; see also, e.g., Logan, 455 U.S. at 433 ("[I]t has become a truism that 'some form of hearing' is required before the owner is finally deprived of a protected property interest.") (citation omitted) (emphasis in original); Section III.A.2, supra (citing cases requiring notice and a hearing).  Given the breadth and depth of this body of precedent stating that summary destruction of an individual's property interest without notice and an opportunity to be heard violates the Due Process Clause, there can be little debate that Bloem's due-process rights were "clearly established" in this case.

Finally, and perhaps most importantly, Bloem's due-process rights were clearly established by this Court in an order issued only 48 hours before NPS employees began clearing McPherson Square.  See Henke, 842 F. Supp. 2d at 61.  In denying Plaintiffs' request for a preliminary injunction, this Court observed that "Plaintiffs . . . [were] due some process before their property [could] be destroyed," id. (citing Propert, 948 F.2d at 1331), but found no evidence

at that stage that "even if seized, [Plaintiffs'] property [was] likely to be destroyed." Id.  The Court, in fact, found that NPS regulations required "the safekeeping and return of impounded property." Id. (citing 36 C.F.R. § 2.22).  The Court then relied on the Government's assurances that it intended to abide by these regulations in denying the preliminary injunction.  Id. (citing Preliminary Injunction Hearing Tr. at 9:23-25).  But the Court, in reaching its prior ruling, never contemplated that Plaintiffs' "tents [would] be destroyed at all, let alone without notice or an opportunity to reclaim them." Id.  Despite the Court's explicit warning that "the seizure of Plaintiffs' property could, depending on the attendant factual circumstances, . . . constitute a [constitutional] violation," id. at 62, the Department – and the Defendants here – allegedly disregarded this Court's Order in summarily destroying Plaintiff's belongings as soon as they were seized. See Third Am. Compl., ¶¶ 28-29.

Although the D.C. Circuit has not spoken to this question, several other circuits have held that government agents are not entitled to qualified immunity where they violate a court order. Indeed, "[a]lthough no statute or constitutional provision explicitly requires that [government agents] comply with a court order . . . it is incomprehensible that [an agent] faced with such an order would not know that he should comply timely and that a failure to do so would undermine the authority of the court." Reitz v. Cnty. of Bucks, 125 F.3d 139, 147 (3d Cir. 1997); see also Sockwell v. Phelps, 20 F.3d 187, 192 (5th Cir. 1994) (denying qualified-immunity defense where defendants violated court order to desegregate two-man cells in state prison); Walters v. Grossheim, 990 F.2d 381, 384 (8th Cir. 1993) (officials' "decision not to comply with [the district court's] judgment was not objectively reasonable"); Slone v. Herman, 983 F.2d 107, 110 (8th Cir. 1993) (finding a "clearly established liberty interest" for qualified-immunity purposes where trial court had issued order suspending defendant's prison sentence, and finding it "not

objectively reasonable for defendants to deny [the prisoner] his freedom because they disagreed with a court order").   Regardless of what Defendants believed, this Court's prior opinion was not ambiguous: Plaintiffs' preliminary-injunction request was denied on the assumption that Defendants would not engage in the kind of conduct Plaintiff alleges here – the summary destruction of his belongings without due process.   Because of the clarity of both this Court's order and the long line of cases regarding the Government's due-process obligations prior to final deprivation of a property interest, Defendants are not entitled to qualified immunity on Plaintiff's Fifth Amendment claim.

## IV.   Conclusion

For the aforementioned reasons, the Court will deny Defendants' Motion to Dismiss.   A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 4, 2013