UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID BLOEM,

    Plaintiff,

    v.

UNKNOWN DEPARTMENT OF THE
INTERIOR EMPLOYEES,

    Defendants.

Civil Action No. 11-2155 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff David Bloem brought this action against unnamed Department of Interior employees pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). His suit arises from the well-documented "Occupy D.C." protests, an offshoot of the "Occupy Wall Street" movement, which took up residence in downtown Washington's McPherson Square during the fall of 2011. In an earlier iteration of this action, a group of protestors claimed that Interior and the U.S. Park Police violated their constitutional rights while clearing the Square to enforce anti-camping regulations. Although the claims of all other protestors have long since been resolved, Bloem soldiers on. As discovery closed in July 2013 and Bloem has yet to serve any Defendant, the Government has now moved to dismiss for failure to serve timely process under Federal Rule of Civil Procedure 4(m). Alternatively, it argues that Plaintiff's failure to follow the Court's orders warrants dismissal under Rule 41(b). Finding merit in the first argument, the Court need not address the second in order to dismiss the case.

1

I.     **Procedural Background**

The factual underpinnings of Bloem's claims are laid out in the Court's earlier decisions, Henke v. Department of Interior, 842 F. Supp. 2d 54 (D.D.C. 2012), and Bloem v. Unknown Department of the Interior Employees, 920 F. Supp. 2d 154 (D.D.C. 2013).  To briefly recap, the events giving rise to this suit were set in motion on October 1, 2011, when "Occupy D.C." undertook a round-the-clock occupation of McPherson Square.  See Third Am. Compl., ¶¶ 10-13.  The group gathered there in solidarity with "Occupy Wall Street," a protest movement concerned with income and power disparities in American society, which had spread that fall from New York City to localities around the country.  See id.

This litigation first came before the Court on December 5, 2011, as Henke v. Dept. of Interior, when counsel filed a Complaint on behalf of a sole Plaintiff, Brett Henke, against a sole Defendant, the Department of Interior.  See ECF No. 1 (Compl.).  Henke alleged his First and Fourth Amendment rights were violated when he was temporarily separated from his property — namely, a tent.  See id., ¶ 24.  This occurred during a period in which officers of the United States Park Police (a subagency of Interior) provisionally cordoned off a section of the Square to remove a wooden structure erected by protestors.  See id.  Contemporaneously, Henke sought a temporary restraining order enjoining the USPP from closing off sections of McPherson Square and from seizing, without probable cause, his property or that of other protestors.  See ECF No. 2 (Mot. for TRO); id. (Proposed Order) at 1.  The Court was able to broker an agreement among parties that same day, leaving the protestors in the park and obviating the need for a restraining order.  See Minute Order, Dec. 5, 2011.  As part of that agreement, the Government committed to provide the protestors with twenty-four hours' notice before taking action to enforce the anti-camping regulations at issue.  Id.

On January 4, 2012, Plaintiffs filed their first of several amended Complaints. See ECF No. 3 (First Am. Compl.). This Complaint added another protestor, Laura Potter, as a named Plaintiff; in addition, it asserted that because Plaintiffs' suit was on behalf of protestors too numerous to practicably count, they deserved certification as a class action. See id., ¶¶ 7-9. The newly numerous Plaintiffs alleged fear of imminent eviction from the Square, rooting their claims in the Fourth Amendment's protections from unreasonable seizures and the Due Process Clause of the Fifth Amendment. See id., ¶¶ 30, 37-39. They sought a preliminary injunction to prevent the enforcement of anti-camping regulations in McPherson Square, the eviction of protestors, and the seizure of their property. See ECF No. 7 (PI Mot.) at 2. The sole Defendant at that time remained the Department of the Interior. See First Am. Compl. On January 10th, Plaintiffs filed proof-of-service affidavits, showing they had served both Interior and the United States in accordance with Federal Rule of Civil Procedure 4(i). See ECF Nos. 8-10.

In denying Plaintiffs' motion, this Court refused to issue an injunction, concluding, *inter alia*, that no destruction of the protestors' property was imminent. See Henke, 842 F. Supp. 2d at 64. Subsequently, on February 4, 2012, after providing the required notice to protestors, the Park Service enforced anti-camping regulations by clearing tents from the park. See Bloem, 920 F. Supp. 2d at 157. It is this tent-clearing action that spawned the claims currently before the Court. Id.

In March 2012, Plaintiffs again filed for, and were granted, leave to amend their Complaint. See ECF No. 24 (Pl.'s Mot. Am.); see also Minute Order, Apr. 17, 2012. In this Second Amended Complaint, Plaintiffs sought both an injunction and compensatory relief for the alleged seizure and destruction of their property on February 4. See ECF No. 27 (Second Am. Compl.). They also jettisoned their pursuit of class certification in favor of an action on behalf

of ten named protestor-Plaintiffs, including Bloem for the first time. He specifically alleged the seizure and destruction of his property, including:

> a green indoor/outdoor carpet which was approximately 10' x 20', a blue tarp which was about 30' x 20' and which was folded and underneath the green carpet, a baby stroller, a tent case, a 6" high white plastic fence, six garden stones which were approximately 1' square and which had "Occupy DC" and children's footprints stenciled on them.

Id., ¶ 46. "Unknown U.S. Park Police Employees" joined Interior as Defendants, see id., ¶ 19, and the case proceeded in this fashion until the fall of 2012.

That September, the ever-evolving parties in this case were whittled down to their present membership when the Court again granted Plaintiffs leave to amend and Bloem was named as sole Plaintiff in the Third Amended Complaint. See Minute Order, Sept. 19, 2012; see also ECF No. 35 (Third Am. Compl.). Bloem's solitary state springs from his co-Plaintiffs' failure to visit a USPP storage facility to determine if they could retrieve their seized property, a condition agreed to by the parties in order for Plaintiffs to maintain their claims. See ECF No. 31 (Order dated July 23, 2012); see also Motion to Dismiss, Att. 1 (Declaration of Mark White), ¶¶ 2, 5 (Bloem only one to inspect property). At that time Bloem also dropped Interior as a party, leaving only the unnamed employees as Defendants. See ECF No. 35 (Third Am. Compl.). This Third Amended Complaint is the operative pleading today.

In November of 2012, Defendants moved to dismiss for failure to state a claim, for insufficiency of process, and on grounds of qualified immunity. See ECF No. 41 (Mot. Dismiss) at 1. Although the Department of Interior was no longer a party to this litigation, the Government was allowed to appear and file a motion on behalf of the unnamed Defendants. See Chung v. DOJ, No. 00-1912, 2001 WL 34360430, at *8 n.11 (D.D.C. Sept. 20, 2001) ("The Court will accept DOJ's arguments on behalf of the unknown officials at this stage . . . [because

4

in part] DOJ sets forth prevailing arguments on the officials' behalf."), aff'd in part and rev'd in part on other grounds, 333 F.3d 273 (D.C. Cir. 2003).  Ruling on the Motion, this Court held that a Bivens action was available for the alleged violations and denied the invocation of sovereign immunity.  See Bloem, 920 F. Supp. 2d at 156-57.  The Court did not decide the service question, but cautioned that it would "allow [Defendants] to renew their service arguments if, at the conclusion of discovery, Plaintiff has failed to identify the Interior employees in question." Id. at 158.

Shortly thereafter, on Valentine's Day 2013, perhaps in the amicable spirit of the holiday, the parties indicated they were undertaking settlement negotiations.  See ECF No. 48 (Mot. to Continue).  These agreeable sentiments proved as evanescent as puppy love, however, and settlement efforts were abandoned when Bloem and his counsel parted ways, citing "irreconcilable differences."  See ECF No. 49 (Mot. to Withdraw as Atty.) at ECF p. 3; see also Minute Order, Mar. 22, 2013.  Bloem has proceeded *pro se* since that time, and the case continued through the close of discovery on July 11, 2013.

Given that the Court had allowed Bloem to proceed against unnamed Interior employees on the condition that he substitute named Defendants after discovery, Bloem, 920 F. Supp. 2d at 158, on July 15, 2013, the Court ordered him at a status conference to file for leave to amend the Complaint on or before August 5, in order to name Defendants if he now could.  See Minute Order, July 15, 2013.  On the prescribed date, Bloem instead filed a now-stricken Fourth Amended Complaint.  See ECF No. 53.  This version identified eleven individual Defendants, including four current or former members of Congress.  See id.  One month later, Defendants moved to strike this Complaint pursuant to Rule 15(a)(2), as they had not consented to its filing and the Court had only permitted Plaintiff to seek leave to amend his Complaint.  See ECF No.

5

54 (Defs.' Mot. Strike) at 2.  On October 1, 2013, the Court granted the Motion to Strike on the dual grounds that Plaintiff's failure to respond had conceded the issue and that the Motion correctly stated the procedural facts.  See ECF No. 55 (Order Granting Mot. Strike) at 1.  There is no evidence that, after his unsuccessful attempt to amend the Complaint, Plaintiff ever endeavored to effect service upon any particular Defendants.  The Government has now moved to dismiss the operative Third Amended Complaint.

## II.     Legal Standard

The Court will treat this Motion as one under Rule 12(b)(5), the proper mechanism for defendants seeking dismissal for a plaintiff's failure to comply with service requirements.  When challenged, "[t]he party on whose behalf service is made has the burden of establishing its validity when challenged" by "demonstrat[ing] that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law."  Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotation marks and citations omitted).  Federal Rule of Civil Procedure 4(m) mandates that a defendant be served within 120 days of the filing of the complaint.  A court may grant an extension, however, upon a showing of good cause or at its discretion.  Henderson v. United States, 517 U.S. 654, 662 (1996).  When service has been untimely, "[t]he burden is on the plaintiff to establish good cause" for delay, 4B Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 1137 (3d ed. 2013), which will be found "when some outside factor . . . [,] rather than inadvertence or negligence, prevented service."  Mann v. Castiel, 681 F.3d 368, 374 (D.C. Cir. 2012) (internal quotation marks and citations omitted).  The requirement of service of process is not a mere technicality; a court lacks personal jurisdiction over a defendant until service has been properly effected.  See Gorman v.

Ameritrade Holding Corp., 293 F.3d 506, 514 (D.C. Cir. 2002) (citing Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)).

**III.     Analysis**

In its Motion to Dismiss, the Government relies on Federal Rules of Civil Procedure 4(m) and 41(b).  Because consideration of the first is enough to warrant dismissal here, the Court will not address the latter.  As just mentioned, under Rule 4(m) a plaintiff normally has 120 days to serve process upon a defendant.  Courts, however, grant exceptions to this general rule when a defendant's identity is unknown to the plaintiff and reasonable discovery is likely to effectuate naming.  See Newdow v. Roberts, 603 F.3d 1002, 1010 (D.C. Cir. 2010); see also Hartley v. Wilfert, 931 F. Supp. 2d 230, 232-233 (D.D.C. 2013).  It is under this theory that Bloem has proceeded for two years against unnamed Defendants – on the condition that he "must substitute named defendants after completion of discovery." Bloem, 920 F. Supp. 2d at 158 (internal quotation marks and citation omitted).  Eight months ago, the parties informed this Court that discovery had been completed, yet to this day no individual Defendants have been properly named and served.

Where a plaintiff fails to timely substitute named defendants — and, concomitantly, fails to effect service upon them — courts regularly grant dismissals.  In doing so, district courts have employed varied mechanisms to dispose of the litigation.  See, e.g., Phelan v. Cambell, No. 10-540, 2012 WL 407147 (N.D.N.Y. Feb. 8, 2012) (denying leave to amend, presumably under Rule 15, one month after close of discovery); Buruca v. Dist. of Columbia, 902 F. Supp. 2d 75, 79 & n.1 (D.D.C. 2012) (dismissing case under Rules 12(b) and 16(b) two years after filing of complaint and where discovery had closed); Simmons v. Dist. of Columbia, 750 F. Supp. 2d 43,

45 (D.D.C. 2011) (dismissing case under Rule 4(m) thirteen months after adding John Does to action).

Among circuit courts that have considered the issue, however, there is considerably more agreement. When reviewing a dismissal for a plaintiff's failure to identify John Doe defendants, the Tenth Circuit has specified that the proper standard is Rule 4(m). See Scott v. Hern, 216 F.3d 897, 911-12 (10th Cir. 2000) (finding Rule 4(m) was "more precisely applicable" than district court's dismissal under Rule 41(b) for failure to prosecute). The First Circuit reached a similar conclusion where "the record disclose[d] no attempt by [plaintiffs] to identify or serve any of the anonymous defendants allegedly responsible . . . . Under Fed.R.Civ.P. 4(m), a district court may dismiss a complaint . . . if the plaintiff fails to serve [the] defendant within 120 days after filing the complaint." Figueroa v. Rivera, 147 F.3d 77, 82-83 (1st Cir. 1998) (upholding on alternative grounds trial court's dismissal). Other circuits have also weighed in on the issue, granting Rule 4(m) dismissals for the failure to name and serve John Doe defendants. See, e.g., Beckerman v. Weber, 317 F. App'x 125, 128 (3d Cir. 2008); Evans v. Lombardi, 37 F.3d 1503, 1503 (8th Cir. 1994).

The aforementioned cases also serve to highlight that the Court has been generous with the time allowed for Bloem to name and serve Defendants. The Complaint was filed twenty-seven months ago, John Doe Defendants were added twenty-four months ago, and discovery was completed eight months ago, at which time Bloem was ordered to file for leave to amend. See ECF Nos. 1 (Compl.), 27 (Second Am. Compl.); see also Minute Order, July 15, 2013. The window afforded to Bloem exceeds all of those provided to the plaintiffs in the above dismissals of Doe defendants.

The Court does not gainsay that Bloem, as a *pro se* plaintiff, was owed fair notice of the requirements for service of process. See Angellino v. Royal Family Al-Saud, 688 F.3d 771, 778 (D.C. Cir. 2012). Without this, dismissal would be improper. Id. To provide such notice, the Court advised Bloem of the procedure to properly name Defendants and once more gave him an opportunity to move to amend his Complaint at a status conference on July 15, 2013. See Minute Order (July 15, 2013). On the prescribed date, despite being instructed to file for leave to amend, he instead filed a Fourth Amended Complaint. See ECF No. 53. As that contravened the Court's clear instruction, this pleading was stricken. See ECF No. 55 (Order Granting Mot. Strike). Nor was this some technical requirement. If the Court had simply accepted Bloem's Fourth Amended Complaint, Defendants would have lost the opportunity to challenge his right to file, a challenge they have all along insisted they would exercise.

Bloem has chosen not to remedy this procedural defect in his stricken Fourth Amended Complaint, despite receiving repeated notifications over the course of the last five months. He first received notice on September 5, 2013, when Defendants moved to strike. See ECF No. 54 (Def. Mot. Strike). At any time during the following month he could have filed an opposition to the Motion explaining his mistake or simply moved for leave to amend. This Court did not grant the Motion to Strike until October 1, 2013, at which time Bloem, for a second time, received affirmative notice that there was a defect in the filing of his Fourth Amended Complaint. See ECF No. 55 (Order). Once again, Bloem could have filed for leave to amend at any time after the Complaint was stricken.[1] Notice was, for a third time, provided to Bloem during an October 23, 2013, status hearing at which he was informed that he could still file for leave to amend.

---

[1] Although parts of the federal government were shut down from October 1-17, 2013, the Court was fully operational and able to accept filings.

9

Finally, Bloem was notified for a fourth time of the omission in his filing upon receipt of Defendants' current Motion to Dismiss.  See ECF No. 57.

The Court also acknowledges that a *pro se* party needs more than fair notice of the Rules' requirements; he must also be apprised of the consequences of noncompliance.  See Moore v. Agency for Int'l Dev., 994 F.2d 874, 876 (D.C. Cir. 1993).  At the aforementioned October 23 status hearing, the stakes of the litigation and the consequences of the failure to remedy the filing error were made clear.  Bloem, again, took no action to rectify the problem.  He was again put on notice of those consequences in Defendants' Motion to Dismiss, the substance of which he chose not to respond to.  See ECF No. 57 (Mot.).  Not only has Bloem still, to this day, failed to file for leave to amend his Complaint, but his Opposition to the Government's Motion entirely ignores the procedural errors at issue.  See ECF No. 59 (Opp.).  Instead, he focuses on the factual allegations contained in his stricken Fourth Amended Complaint.  This is all despite the fact that Bloem has received far more than the required "minimal notice of the consequences of not complying with procedural rules."  Moore, 994 F.2d at 876 (citation omitted).  Further, as Moore expressly states, "The assistance provided by the district courts, however, . . . does not constitute a license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure."  Id. (internal quotation marks and citation omitted).

This Court is sensitive to fact that "'*[p]ro se* litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings.'" Angellino, 688 F.3d at 778 (alteration in the original) (quoting Moore, 994 F.2d at 876).  This goodwill is exhaustible, however, where litigants have had notice and opportunity to correct defects.  See Mann, 681 F.3d at 377.  This Court has been abundantly patient with this Plaintiff. Bloem has been proceeding *pro se* in this action for nearly a year, discovery was completed eight

10

months ago, and, despite fair notice of the requirements of service of process and ample notice of the defects in his filing, he has still yet to properly name and serve process upon any individual Defendant in this action.

To be sure, the D.C. Circuit has advised that, "[a]lthough district courts have broad discretion to dismiss a complaint for failure to effect service, dismissal is not appropriate when there exists a reasonable prospect that service can be obtained." Novak v. World Bank, 703 F.2d 1305, 1310 (D.C. Cir. 1983) (citations omitted).  Cases invoking this rule for non-incarcerated *pro se* plaintiffs, however, have involved good faith efforts to comply with complex service rules.  See, e.g., Angellino 688 F.3d at 771 (finding reasonable prospect to exist when plaintiff twice attempted to serve Saudi royal family in manner he believed to be compliant with complex, intersecting foreign-service rules); Grammenos v. Lemos, 457 F.2d 1067, 1071 (2d Cir. 1972) (finding reasonable prospect to exist when court dismissed suit immediately after quashing service because of plaintiff's misunderstanding of "usual place of abode" despite availability of alternative service options), cited in Novak, 703 F.2d at 1310.  That is not the case here, and while it is true that service might yet be obtained, Bloem's repeated failures to do so under the circumstances render that prospect unreasonable.  See Mann, 681 F.3d at 376 (upholding dismissal where *pro se* "plaintiffs had not been diligent in correcting the service deficiencies; although alerted to their non-compliance with Rule 4(m) and the potential for dismissal of the case nearly five months earlier, plaintiffs had taken no action to remedy their non-compliance").

While the Court affords wide latitude to *pro se* litigants in matters of service of process, Bloem is not the only party to this case with rights, and those of potential Defendants must also be considered at this stage.  They deserve to either receive timely notice of the action pending against them or to have it dismissed for Plaintiffs' failure to do so because

> plaintiff cannot seriously expect the unnamed police officer, who has never been given notice, to know of the lawsuit . . . . Plaintiff had the responsibility of taking the steps necessary to identify the officer responsible for his injuries, a responsibility substantially supported by the discovery mechanisms available to him during the pendency of the lawsuit.

Strauss v. City of Chicago, 760 F.2d 765, 770 n.6 (7th Cir. 1985) (citation omitted).

Bloem leaves the Court with little alternative: he received fair notice of the requirements to effect service, repeated notice of the procedural error of failing to file for leave to amend, and clear warning of the stakes involved in failing to remedy this problem. When given the opportunity to explain his actions and provide good cause as to why the Court should deny the Government's Motion to Dismiss, he chose not to act. For these reasons, Bloem qualifies for neither a good-cause nor a discretionary extension, and the Court, therefore, will dismiss the matter without prejudice on service grounds.

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order dismissing the case without prejudice for failure to serve timely process upon Defendants.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 12, 2014